PROB 12C
(Rev.2011)

# United States District Court
for
## Middle District of Tennessee

## Petition for Summons for Offender Under Supervision

Name of Offender: <u>Ryan J. Cummins</u>   Case Number: <u>3:11-00090</u>

Name of Judicial Officer: <u>Honorable John T. Nixon, U.S. District Judge</u>

Date of Original Sentence: <u>November 14, 2012</u>

Original Offense: <u>18 USC § 2250(a) Failure to Register Under Sex Offender Registration and Notification Act</u>

Original Sentence: <u>37 months' custody and ten years' supervised release</u>

Type of Supervision: <u>Supervised Release</u>   Date Supervision Commenced: <u>January 15, 2014</u>

Assistant U.S. Attorney: <u>S. Carran Daughtrey</u>   Defense Attorney: <u>Deanna Bell Johnson</u>

---

### PETITIONING THE COURT

__X__ To issue a Summons.
____ To issue a Warrant.

---

**THE COURT ORDERS:**
☐ No Action
☐ The Issuance of a Warrant:
    ☐ Sealed Pending Warrant Execution
        (cc: U.S. Probation and U.S. Marshal only)
☒ The Issuance of a Summons.
☐ Other

Considered this _2nd_ day of _October_, 2014
and made a part of the records in the above case.

_____
John T. Nixon
U. S. District Judge

I declare under penalty of perjury that
the foregoing is true and correct.
Respectfully submitted,

_____
Donna Jackson
Intensive Supervision Specialist

Place   <u>Nashville, TN</u>

Date   <u>September 30, 2014</u>

## ALLEGED VIOLATIONS

The probation officer believes that the offender has violated the following condition(s) of supervision:

Violation No.   Nature of Noncompliance

1.  **The Defendant shall participate in sex offender assessment and treatment, including, but not limited to polygraph/plethysmorgraph examinations recommended by the treatment provider and as directed by the U.S. Probation Office. The Defendant shall contribute to the cost based on the ability to pay as determined by the U.S. Probation Office.**

    Mr. Cummins has failed to participate in sex offender treatment as directed by the U.S. Probation Office. Mr. Cummins signed his treatment contract on March 4, 2014, and began attending treatment on March 11, 2014. The offender fell asleep during group treatment on April 29, 2014, and May 20, 2014. He was confronted about falling asleep and given redirection on both occasions. On May 27, 2014, Mr. Cummins was placed on therapeutic probation due to his lack of motivation to work on issues and compliance with simple directions. On September 9, 2014, Mr. Cummins was again observed sleeping soon after group started at 6:00 p.m. At 6:30, when he was observed sleeping again and creating a distraction to others, he was asked to leave. He was informed at that time he was being dismissed from treatment.

2.  **The Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

    On May 7, 2014, the probation officer was advised by Mr. Cummins' employer that he missed work on May 5, 2014. He told his employer he had to take his girlfriend to the doctor. Mr. Cummins reported to the probation officer on May 7, 2014, that he missed work on May 5 because he was dealing with family issues with his mother. Upon further questioning, the offender admitted he lied to the probation officer and admitted he was dealing with his girlfriend.

    On May 23, 2014, Mr. Cummins was asked about failing a polygraph administered on May 14, 2014. His failure was based on unauthorized use of a cell phone. Mr. Cummins told the probation officer three different stories regarding the cell phone use. After telling the first and second story, he admitted he had not been truthful.

    During an employment contact on July 24, 2014, Mr. Cummins' supervisor advised the offender had gotten into a fight with a co-worker the day before. Mr. Cummins received a black eye during the incident. When the probation officer questioned Mr. Cummins about the black eye, he lied and advised he ran into a piece of equipment at work. When confronted, Mr. Cummins admitted he had lied, but had no explanation as to why he lied. He advised he lies when he gets nervous.

**Compliance with Supervision Conditions and Prior Interventions:**

Mr. Cummins began his imposed term of supervised release on January 15, 2014. He is currently scheduled to terminate supervision on January 14, 2024. Mr. Cummins has completed payment of his special assessment.

Mr. Cummins attended sex offender specific treatment from March 4, 2014, to September 9, 2014. He currently resides at the Nashville Rescue Mission. He is employed by Southeastern Recycling. Mr. Cummins indicated he is trying to secure another treatment provider. He noted he would be contacting Tony Rankin with the Counseling Center. On September 30, 2014, Mr. Rankin was contacted and confirmed the offender is in treatment with the Counseling Center. Mr. Cummins was assessed on September 25, 2014, and started treatment on September 29, 2014. Attached is Mr. Cummin's treatment summary from Dr. Moore outlining the behavior of the offender that lead to his dismissal from that program.

**Update of Offender Characteristics:**

There is no additional information relevant to this section that has not already been provided in this petition.

**U.S. Probation Officer Recommendation:**

It is respectfully recommended that a summons be issued for Ryan Cummins, so that he may appear before the Court to answer to the violation behavior outlined above. Mr. Cummins' failure to comply sex offender specific treatment is not only a violation of supervised release, it presents a risk to the community.

Assistant U.S. Attorney Carrie Daughtrey concurs with the probation officer's recommendation for a summons.

Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer

SENTENCING RECOMMENDATION
UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
UNITED STATES V. RYAN JACOB CUMMINS CASE NO. 3:11-00090

**GRADE OF VIOLATION:** C
**CRIMINAL HISTORY:** V

**ORIGINAL OFFENSE DATE:** POST APRIL 30, 2003    PROTECT ACT PROVISIONS

| | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| CUSTODY: | 2 Years (Class C Felony) 18 U.S.C. § 3583(e)(3) | 7-13 months U.S.S.G. § 7B1.4(a) | No recommendation |
| SUPERVISED RELEASE: | Any term not less than 5 years or life 18 U.S.C. 3583(k) | 5 years to life U.S.S.G. § 5D1.2(b)(2) | No recommendation |

18 U.S.C. § 3583(e)(3) The Court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the Court finds by a preponderance of the evidence that the offender violated a condition of supervised release. When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release, in accordance with 18 U.S.C. § 3583(h).

**Guideline Policy Statements:** Pursuant to U.S.S.G. § 7B1.3(a)(2), upon a finding of a Grade C violation, the Court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision.

Where the minimum term of imprisonment determined under § 7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. U.S.S.G. § 7B1.3(c)(2).

Respectfully Submitted,

Donna Jackson
Intensive Supervision Specialist

Approved: Britton Shelton
Supervisory U.S. Probation Officer

LF021
REV 05/01

# VIOLATION WORKSHEET

1. **Defendant** Ryan Jacob Cummins

2. **Docket Number** *(Year-Sequence-Defendant No.)* 0650 3:11CR00090 - 1

3. **District/Office** Middle District of Tennessee / Nashville

4. **Original Sentence Date**  11 / 14 / 2012
                                    month  day  year

5. **Original District/Office** _____
   *(if different than above)*

6. **Original Docket Number** *(Year-Sequence-Defendant No.)* _____

7. **List each violation and determine the applicable grade (see §7B1.1):**

   | Violation(s) | Grade |
   |---|---|
   | Shall participate in sex offender assessment and treatment | C |
   | Shall answer truthfully all inquiries by the probation officer | C |

8. **Most Serious Grade of Violation** *(see §7B1.1(b))*    [ C ]

9. **Criminal History Category** *(see §7B1.4(a))*    [ V ]

10. **Range of Imprisonment** *(see §7B1.4(a))*    [ 7 - 13 ] months

11. **Sentencing Options for Grade B and C Violations Only** *(Check the appropriate box):*

    ☐ (a) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, §7B1.3(c)(1) provides sentencing options to imprisonment.

    ☒ (b) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, §7B1.3(c)(2) provides sentencing options to imprisonment.

    ☐ (c) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than ten months, no sentencing options to imprisonment are available.

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002

Defendant  Ryan Jacob Cummins

12. **Unsatisfied Conditions of Original Sentence**

   List any restitution, fine, community confinement, home detention. or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (see §7B1.3(d)):

   Restitution($) _____   Community Confinement _____

   Fine($)      _____   Home Detention          _____

   Other        _____   Intermittent Confinement _____

13. **Supervised Release**

   If probation is to be revoked, determine the length, if any, of the term of supervised release according to the provisions of §§5D1.1-1.3 (see §§7B1.3(g)(1)).

   Term: _____ to _____ years

   If supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the defendant may, to the extent permitted by law, be ordered to recommence supervised release upon release from imprisonment (see 18 U.S.C. §3583(e) and §7B1.3(g)(2)).

   Period of supervised release to be served following release from imprisonment: 5 years to life

14. **Departure**

   List aggravating and mitigating factors that may warrant a sentence outside the applicable range of Imprisonment:

15. **Official Detention Adjustment** (see §7B1.3(e)): _____ months _____ days

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002


psychology services

Officer Donna Jackson
United States Probation Officer
Middle District of Tennessee
110 9th Avenue South
U.S. Courthouse STE. A-725
Nashville, Tennessee  37203-3899

RE:  Ryan Cummins

September 15, 2014

## TREATMENT SUMMARY
(Confidential)

### SOURCES OF INFORMATION:
Moore Psychology Services Records including Report of Psychosexual Evaluation
  Therapeutic Probation Contract and progress noted (February 20 through
  September 9, 2014)
Centerstone Community Mental Health Center (CMHC) Records
Polygraph Examinations- James Lane (May 14, 2014 and August 11, 2014)

### PRESENTING PROBLEM:
Ryan Cummins was seen by this psychologist February 11, 2014 for a psychosexual evaluation and for consideration of sex offender treatment services. Mr. Cummins was convicted of Failure to Register Under the Sex Offender Registration and Notification Act and sentenced to 37 months of custody. His sexual offense for which he was required to register were committed in 1999 against three boys. The reader is encouraged to read the full report dated February 20, 2014.

Psychological testing during the evaluation indicated that Mr. Cummins portrayed his self in a manner more virtuous than is likely true and despite this attempt at impression management, he scored high on a scale measuring traits of psychopathic deviance. Risk assessment suggested his risk was high considering static factors, and his criminal thinking and antisocial behaviors contributed to dynamic risks for him and elevated his overall risk level within that category. It was noted that based on his history, he may have difficulty following rules and that he be monitored closely for compliance. He was recommended for sex offender treatment, no use of pornography, no frequenting establishments where sexual themes are promoted, no use of alcoholic beverages or illegal drugs, no use of electronic devices for receiving or sending sexual materials, no contact with victims, and to have full disclosure as well as monitoring polygraph examinations.

7003 Chadwick Drive
Suite 355
Brentwood, TN 37027
615-595-6412

CUMMINS, Ryan
0114-820                                                                                        Page 2

Mr. Cummins signed his treatment contract on March 4, 2014. He was scheduled for weekly group and once monthly individual sessions, and he joined the Tuesday 6 p.m. treatment group on March 11, 2014. From the beginning, he was disruptive and interrupted others often offering irrelevant material about his self or advice to others. He was counseled on April 29 and again on May 20, 2014 after he fell asleep in the group. He was educated that additional sleeping during group would lead to expulsion from the program. While he was often in the building early for his appointments, he often was seen wandering around the building yet came unprepared for group. He had homework and check in sheets incomplete and came with no check in sheets. He came to group unprepared and violated group rules of having contact with others outside of group asking for check in forms as he did not have any. He failed his first polygraph examination on May 14 due to deception related to unauthorized cell phone use. Due to his lack of motivation to work on issues and compliance with simple directions, he was put on therapeutic probation on May 27, 2014. His separate therapeutic probation contract indicated that in addition to his treatment contract rules, he was to attend all sessions, observe all treatment guidelines, complete all assignments, and increase participation. If he was unclear about what he should do, he was to seek clarification and if necessary, take notes on what he was expected to do. It was noted that if he continued to display problem behaviors, he would be immediately dismissed from the session and subject to program expulsion.

In group that evening (May 27) Mr. Cummins had to be prompted to discuss this status and said he was not sure why he was on therapeutic probation. He was challenged by group about not being focused on the program and his lack of motivation for therapy. Mr. Cummins noted his multiple violations in the past were due to his not thinking the rules were important, not thinking he would get caught, and if he did, talking his way out of consequences. He admitted he had poor coping skills and reported masturbating three times weekly for stress management and managing emotions of depression or boredom. He was working on his sexual history in order to develop his specific treatment plan but his efforts in completing this assignment were poor and the product disorganized and vague.

On August 5 Mr. Cummins was challenged about an altercation with a coworker. He admitted that he lied to Officer Jackson when he initially told her he had a black eye after he ran into a door. He said the incident started when he was sitting instead of working and he made statements to others that provoked the incident. He admitted he put his hands on the other person but denied striking or attempting to strike him despite reports indicating otherwise. In group as he discussed this, he made racist remarks about the other men and admitted threatening them with reporting them to INS as several of his coworkers were undocumented workers. He was challenged about using threats and using violence to get his needs met. He said he felt that he deserved to be making more money and have the opportunities they had and resented them for what he felt he deserved. Although this violated his therapeutic probation contract, he was allowed to stay in the program.

Mr. Cummins had to take a polygraph 90 days after his first failed examination. He passed this examination but admitted risk relevant behaviors previously undisclosed to this therapist. He disclosed he was receiving oral sexual contact from two men who were also residents of the Rescue Mission. He denied he was in a relationship and said one man "enjoys it." He denied either relationship was exploitive. He admitted drinking alcohol which he insisted was not a violation of his probation although it is a treatment rule and going to a karaoke bar. These disclosures are a treatment program violation and are in violation of his therapeutic probation contract. Despite the group focusing the entire evening on him, upon return the following week, he failed to integrate feedback and could not remember what was said to him. He had taken no notes and said when asked that he expected the group member to remind him and prompt him about what they said. He was often considering his response to justify his actions and failed to attend to what group was asking him. He seemed unconcerned about his poor treatment progress and participation. Members challenged his behavior that tended to be generally his lack of focus and motivation in treatment and understanding his offending cycle and behaviors. He said he felt that people were trying to hold him accountable and if he did not listen or attend to what was said to him, he did not have to deal with it. He was distracted by personal goals (getting a new job, finding a roommate, seeking a relationship) and evidenced no distraction when talking about what he wants. He asked this psychologist for financial advice despite being reminded during the last individual session of what is appropriate to work on in therapy.

On September 9 Mr. Cummins was again observed sleeping soon after group started at 6 pm and at 6:30 when he was sleeping again and creating a distraction to others as well, he was asked to leave. He was informed that he was dismissed.

Risk for sexual reoffense is predicted by sexual deviance traits (such as sexual interest in children) and criminogenic traits or criminal thinking (deception, poor self regulation, irresponsibility). Mr. Cummins has both, but his criminogenic traits and antisocial personality characteristics make his complying with any treatment program unlikely. Risk is reduced by effortful intervention and estimates do not begin to decline until many years in the community offense free and without violations. His history shows multiple violations including leaving the state and his referral offense is due to noncompliance. His cavalier attitude toward treatment was noted as he was interested in obtaining a job, an apartment, and sexual partners instead of treatment based goals, and he was often oblivious to what he needed to be doing in the one hour per week of therapy. Despite being educated multiple times, he did not take notes or recall what was said to him, or feedback given for his consideration. He was encouraged to seek medication management of any symptoms of inattention (e.g. ADHD) if necessary, although his distractibility and inattention were absent when he was focused on what subjects of which he was interested. He did not seem interested in the group work or topics to learn to identify and manage his risk relevant behavior and despite having repeated issues, did not demonstrate an effort to correct them. Mr. Cummins' risk is high and has not been reduced.

Risk resulting from deviant sexuality could be ameliorated, although not eradicated, through intensive specified treatment provided in the community through a containment

CUMMINS, Ryan
0114-820                                                                       Page 4

model that includes treatment, probation, and polygraph. For one to manage sexual deviance, one must first appreciate their sexual motivation, maintain some awareness and insight into their disorder and internal risks, and actively prevent feeding the deviant interests in order to replace these behaviors with healthy choices. Mr. Cummins' disinterest, lack of motivation, sexual deviance, poor emotional control and poor self regulation will make engaging in and benefiting from treatment doubtful. In considering a containment model of supervision including treatment, supervision and polygraph, when one component of this model is absent, the other features need to be increased. Monitoring requirements including external components may be more prudent as internal ones do not seem appropriate for Mr. Cummins.

Thank you for your help and supervision of this case. If I can provide additional information, I would be happy to do so and you may contact me at 615-595-6412. I look forward to working with you in the future.

Prepared by:

*[signature]*

Donna L. Moore, Ph.D.
Licensed Psychologist

**Defendant's Address:**
Ryan Jacob Cummins
Nashville Rescue Mission
639 Lafayette Street
Nashville, TN 37203